NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| GEORGE LAYTON, Jr. | |
| Plaintiff, | |
| v. | Civil No. 19-9120 (RBK) |
| | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff George Layton, Jr.'s Appeal (Doc. No. 1) from the final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. For the reasons set forth below, the Commissioner's decision is **VACATED** and this case is **REMANDED** for further administrative proceedings consistent with this Opinion.

## I. PROCEDURAL BACKGROUND[1]

On April 17, 2014, Plaintiff filed an application for Disability Insurance Benefits, alleging a disability onset date of August 4, 2012. (R. at 12, 102). His application was denied on November 12, 2014, and his request for reconsideration was denied on June 5, 2015. (R. at 102–19, 124–32). On July 29, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R.

---

[1] Because the record is voluminous, the Court sets forth only those facts necessary for context and relevant to the issues upon appeal. The Court cites to the administrative record as "R." Background facts and medical history are set forth in a separate section below.

at 135–35). The hearing was held on October 20, 2017, at which Plaintiff, his father, and a vocational expert ("VE") testified. (R. at 38–101). The ALJ issued an unfavorable decision on March 16, 2018. (R. at 12–33). Plaintiff requested review of the ALJ's decision by the Appeals Council, which the Appeals Council denied on January 29, 2019. (R. at 1–6, 199). As such, the ALJ's decision became the final decision of the Commissioner. Plaintiff now appeals this determination.

## II.    LEGAL STANDARD

### A.  Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses an established five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing his disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that he was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must demonstrate that he has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. Third, either the claimant shows that his condition was one of the Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the ALJ must assess the claimant's residual functional capacity ("RFC"), and the

claimant must show that he cannot perform his past work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404. 1520(e). If the claimant meets his burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant can perform based on his RFC, age, education, and work experience. 20 C.F.R. § 404.1520 (a)(4)(v); *Zirnsak*, 777 F.3d at 612. If the claimant can make "an adjustment to other work," he is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

**B. Review of the Commissioner's Decision**

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak*, 777 F.3d at 610 (citing 42 U.S.C. §405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See*, *e.g.*, *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F.Supp. 277, 284-85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing

evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 110, 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III. FACTUAL BACKGROUND

### A. Plaintiff's History

Plaintiff was born in 1975 and was forty-two years old on his date last insured. (R. at 32). Plaintiff has a high school education and training as a journeyman carpenter, and previously worked as a sheet rock installer. (R. at 52, 54–56). Plaintiff lives alone and is generally able to perform household chores by himself, although he testified that he sometimes needs someone else to carry heavy items up the stairs to his apartment for him. (R. at 65). His parents live one mile away, and he frequently walks there to have dinner. (R. at 65). He has joint custody of his teenage son. (R. at 75). Plaintiff takes his son to baseball practice and games, to church, and out to eat. (R. at 75–76).

Plaintiff contends that his disability dates to an August 4, 2012 car accident. (R. at 53). Due to this accident and pre-existing injuries, Plaintiff contends he suffers from a variety of physical ailments, including herniations, nerve damage, and muscle atrophy. (R. at 60–61). He reports feeling severe pain in his neck, right shoulder, and lower back, and takes ibuprofen and Percocet daily to manage his pain. (R. at 58, 60). His use of his right arm is greatly limited, and often feels numbness or tingling in that region. (R. at 67–68). Occasionally his back pain will extend into his hamstrings. (R. at 69). Plaintiff has sought treatment through physical therapy and from chiropractors but has not found either effective. (R. at 63–64).

In addition to these physical difficulties, Plaintiff also suffers from a number of mental health disorders. Plaintiff has been receiving psychiatric treatment for thirteen years. (R. at 70). He feels anxious when around crowds of people, and since the August 2012 accident has tried to avoid driving. (R. at 72). He also reports symptoms he believes are consistent with obsessive-compulsive disorder. (R. at 72–73). He takes Xanax and Adderall to manage his mental health issues. (R. at 71–72).

**B. Relevant Medical History**

A number of medical opinions and treatment records are in the administrative records. Only those relevant to the current appeal are discussed below.

*i. Dr. Kaniz Khan-Jaffery*

Dr. Kaniz Khan-Jaffery treated Plaintiff for his physical pain from September 12, 2016 through September 18, 2017. (R. at 599–636). On November 1, 2017, Dr. Khan-Jaffer completed Medical Source Statements on Plaintiff's condition. (R. at 770–71, 772–76). These check-the-box forms indicate that in a "competitive work situation" Plaintiff could never lift or carry weight; could only use his right upper extremity ten percent of the workday and his left upper extremity twenty percent of the workday; and would be absent more than three times a month. (R. at 770–71). They also state that Plaintiff has limitations in the range of motion of his head, neck, and right shoulder and that pain is present. (R. at 771, 774). Dr. Khan-Jaffery wrote that Plaintiff's "neck and upper right extremity have limited range of motion." (R. at 771, 776).

*ii. Dr. Edward Black*

Dr. Edward Black is a psychiatrist who treated Plaintiff for at least ten years through 2017. (R. at 769). There are three statements from Dr. Black in the administrative record. First, in a January 7, 2015 Examination Form, Dr. Black indicated that Plaintiff was diagnosed with

Attention Deficit Disorder ("ADD") and bipolar disorder, and that Plaintiff displayed symptoms of limited memory, understanding, cognition, concentration, attention, social function, and living skills. (R. at 587). Dr. Black also noted that Plaintiff was unable to work, indicating that he had physical limitations including climbing, stooping, bending, lifting, and the use of his hands. (R. at 588).

Second, in an April 6, 2017 Examination Report form, Dr. Black indicated that Plaintiff was diagnosed with Post-Traumatic Stress Disorder ("PTSD"), and that he was being treated with psychotherapy and Xanax. (R. at 589). He noted that Plaintiff would be unable to seek "gainful employment" for at least a year due to his "excessive instability." (R. at 589).

Finally, in an October 30, 2017 letter, Dr. Black disclosed that he had closed his practice due to his own health problems. (R. at 769). However, he explained that he had treated Plaintiff "on and off, on a weekly basis" for the past ten years. (R. at 769). He stated that Plaintiff still suffers from "ADD, severe anxiety, depression, and PTSD," and advised that he would try to answer any further questions. (R. at 769).

At the administrative hearing, Plaintiff's counsel explained that she had been unable to obtain treatment notes from Dr. Black. (R. at 47). The ALJ said that she would issue a subpoena to Dr. Black to obtain his notes. (R. at 47–48, 100). However, there is no indication that the ALJ ever issued the promised subpoena, and Dr. Black's treatment notes are not in the record.

### iii. Dr. Leslie Williams

As part of the application process for Social Security benefits, Plaintiff was directed to attend a consultative mental health examination with a psychologist, Dr. Leslie Williams, in June 2015. (R. at 73–74, 117–18). Plaintiff arrived at the examination site and checked in, but shortly thereafter received a call on his cell phone and left the office. (R. at 116). Apparently because

Plaintiff did not submit for an exam, Dr. Williams determined that there was insufficient evidence for her to evaluate Plaintiff's claim, and thus did not tender an opinion on Plaintiff's mental health. (R. at 118).

**C. The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 4, 2012. (R. at 14). At step two, the ALJ found Plaintiff to have the following severe impairments: cervical disease with multilevel bulging discs and right cervical radiculopathy; lumbar disc disease with multilevel bulging discs and lumbar radiculopathy with a herniated nucleus pulposus (HNP) at L5-S1; severe arthritis of the inferior glenoid with atrophy of the right infraspinatus muscle; chronic pain syndrome; generalized anxiety disorder; PTSD; ADD; and bipolar disorder. (R. at 14–15). At step three, the ALJ found that none of Plaintiff's impairments met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16). The ALJ then constructed Plaintiff's RFC, finding that he was able to perform:

> light work (20 CFR 404.1567(b)) defined as lifting/carrying twenty pounds occasionally and ten pounds frequently but he could use the dominant upper extremity only to lift up to five pounds. In an eight-hour day, he could sit six hours and stand and/or walk six hours. He could perform each of these up to thirty minutes uninterrupted before having to switch to another position. He could never climb ladders, ropes, or scaffolds. He could occasionally climb ramps and stairs, stoop, crouch, kneel, crawl, and balance. He could occasionally operate a motor vehicle. He could occasionally push or pull with the right lower extremity and right upper extremity, which is the dominant upper extremity. He could occasionally reach overhead with the right upper extremity. He could understand and carry out simple and routine instructions in a low stress job, which is defined as having only occasional changes in the work setting and only occasional decision making required. He could have occasional interaction with coworkers and the public.

(R. at 18).

In formulating the RFC, the ALJ generally credited Plaintiff's account of his condition and his medical issues but found that the medical evidence did not support any further limitations. (R. at 19–20). Specifically, the ALJ asserted that the record as a whole undermined Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms." (R. at 27). Although the reports of Dr. Khan-Jaffery and Dr. Black would seem to support further limitations, the ALJ gave these reports little weight. (R. at 29–31).

The ALJ rejected Dr. Khan-Jaffery's report because "it is extreme and not supported by the objective evidence." (R. at 31). She noted numerous inconsistencies between Dr. Khan-Jaffery's opinion and his treatment notes: while Dr. Khan-Jaffery opined that Plaintiff could carry no weight, his own exams were normal except for cervical and lumbar tenderness; while Dr. Khan-Jaffery said Plaintiff's range of motion was limited, his notes said there was full range of motion in Plaintiff's neck; and while Dr. Khan-Jaffery said Plaintiff would have limited use of his upper left extremity, his notes do not discuss Plaintiff's upper left extremity at all, and Plaintiff's cervical radiculopathy was only on his right side. (R. at 31). The ALJ further discounted Dr. Khan-Jaffery's submission because it was a simple check-the-box form without any meaningful narrative explanation, and because his opinion was not supported by other medical evidence in the record. (R. at 31).

While the ALJ credited Dr. Black when finding that Plaintiff has severe mental impairments, she disregarded the other conclusions in his reports, chiefly because his treatment notes were not in the record. (R. at 29–30). She also found Dr. Black's opinion on Plaintiff's physical limitations unpersuasive because these limitations are outside of Dr. Black's area of expertise. (R. at 30). Finally, the ALJ noted that she did not have to give any "special significance"

to Dr. Black because he had opined on the ultimate issue of Plaintiff's disability, an issue reserved to the Commissioner. (R. at 30).

Given Plaintiff's RFC, at step four, the ALJ concluded that he was unable to return to his past work as a sheet rock installer. (R. at 31–32). But at step five, based on the VE's testimony, the ALJ found that there are jobs that Plaintiff could perform that exist in significant numbers in the national economy, including officer helper, mail clerk, marker II, cutter/paster, circuit board touch up screener, and document specialist. (R. at 32–33). As such, the ALJ found Plaintiff not disabled. (R. at 33).

## IV. DISCUSSION

On appeal, Plaintiff raises three challenges to the Commissioner's decision: (1) that the RFC constructed by the ALJ, uncorroborated by any medical opinion, is not supported by substantial evidence, (Doc. No. 21 ("Pl. Brief") at 8–11); (2) that the ALJ erred in rejecting the opinions of Plaintiff's treating physicians, Dr. Khan-Jaffery and Dr. Black, (*id*. at 11–20); and (3) that the ALJ did not properly evaluate Plaintiff's allegations of pain and limitations, (*id*. at 20–21). The Court begins with Plaintiff's second challenge.

### A. The Rejected Opinions

In order for a treating physician's opinion to receive "controlling weight" it must be: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). But even if a treating physician's opinion is not entitled to controlling weight, it is still due substantial respect:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time . . . . The ALJ must consider the medical findings

> that support a treating physician's opinion that the claimant is disabled. In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.

*Morales*, 225 F.3d at 317 (internal quotations and citations omitted). As discussed below, the ALJ identified contradictory medical evidence undermining Dr. Khan-Jaffery's opinion but erred in her handling of Dr. Black's.

### i. Dr. Khan-Jaffery

The ALJ dismissed Dr. Khan-Jaffery's opinion because "it is extreme and not supported by the objective evidence." (R. at 31). Specifically, the ALJ found Dr. Khan-Jaffery's opinion to be inconsistent with his own treatment notes. (R. at 31). While Dr. Khan-Jaffery stated that Plaintiff was unable to lift any weight, (R. at 770), his examination findings were consistently normal except for cervical and lumbar tenderness, (R. at 599–602). Similarly, although Dr. Khan-Jaffery stated that Plaintiff would be unable to use his upper left extremity for more than twenty percent of the workday, his treatment notes are devoid of any findings relating to Plaintiff's left arm. (R. at 599–626, 770–71).

Plaintiff argues that the ALJ's own review of the medical evidence reveals numerous pieces of objective medical evidence that support Dr. Khan-Jaffery's view of Plaintiff's impairments. (Pl. Brief at 14–15). Having laid out all of this evidence in earlier sections of her decision, when discussing Dr. Khan-Jaffery's opinion the ALJ explained that none of it supported his view of Plaintiff's condition. (R. at 32). In doing so, the ALJ did not ignore the medical evidence, nor deny that it supports the existence of Plaintiff's impairments; rather, she merely determined that it does not support impairments of the same degree as urged by Dr. Khan-Jaffery. (R. at 31). She was not required to explain further. *See Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981) (finding that

while the ALJ must explain her decision to disregard probative evidence, "in most cases, a sentence or short paragraph would probably suffice").

Finally, the ALJ appropriately discounted Dr. Khan-Jaffery's submission because it was merely a check-the-box form without any meaningful explanation of his findings. *See Hevner v. Comm'r Soc. Sec.*, 675 F. App'x 182, 184 (3d Cir. 2017) (explaining that "check box" forms are "'weak evidence at best' in the disability context'" (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993))). In light of all of these deficiencies, substantial evidence supports the ALJ's treatment of Dr. Khan-Jaffery's opinion.

      ii. Dr. Black

Plaintiff also contends that the ALJ erred by ignoring the opinions provided by Dr. Black. (R. at 29). The record contains two Examination Reports from Dr. Black, one from January 2015 and the other from April 2017, and one letter from October 2017. These documents contain three distinct categories of assessments of Plaintiff's condition. First, all of these documents indicate that Plaintiff suffers from a variety mental health disorders, including bipolar disorder, PTSD, depression, anxiety, and ADD. (R. at 587, 589, 769). Second, the January 2015 examination report indicated that Plaintiff has certain physical limitations, including climbing, bending, stooping, lifting, and using his hands. (R. at 588). And third, both Examination Reports indicated that Plaintiff is unable to work. (R. at 588–89).

The ALJ treated these categories of assessments differently. The ALJ credited Dr. Black's diagnosis of Plaintiff's mental health disorders, at least as set forth in the October 2017 letter, as that letter served as the basis for her finding that Plaintiff has severe mental impairments. (R. at 30). Next, the ALJ appropriately dismissed Dr. Black's assessment of Plaintiff's physical limitations because, as a psychiatrist, these limitations are outside his area of expertise. *See*

*Chaluisan v. Astrue*, No. 07-3130, 2008 WL 5427901, at *8 (D.N.J. Dec. 30, 2008) (finding ALJ properly rejected treating physician's opinion that related to matters outside of his expertise). Finally, the ALJ ignored Dr. Black's opinion on Plaintiff's fitness for work because that issue is reserved for the Commissioner, and there were no treatment notes in the record from Dr. Black to support this opinion. (R. at 29–30).

Although the ALJ was correct to note that she could not be bound by Dr. Black's opinion on Plaintiff's ability to work, she nonetheless erred by failing to seek additional clarification from him. *See Murphy v. Comm'r of Soc. Sec.*, No. 19-6425, 2020 WL 1486041, at *9 (D.N.J. Mar. 26, 2020) (remanding case due to ALJ's failure to recontact treating source physician who opined on an area reserved for the Commissioner); *Neitz v. Colvin*, 2015 WL 1608725, at *8 (M.D. Pa. Apr. 10, 2015) (noting that "when a treating source issues an opinion on an issue reserved to the Commissioner, the ALJ is generally obligated to recontact the treating physician"). The applicable regulation states:

> Nevertheless, our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner. For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.

SSR 96–5p.[2]

Subsequently enacted regulations have modified SSR 96–5p, such that "recontacting a medical source is now discretionary" rather than mandatory. *Bryson v. Comm'r of Soc. Sec.*, 639 F. App'x 784, 787 n.8 (3d Cir. 2016) (citing 20 C.F.R. § 404.1520b(c)–(d)).[3] But per the agency's

---

[2] SSR 96–5p has been rescinded, but remains in effect for claims, such as this one, filed before March 27, 2017. Recission of Social Security Rulings 96–2p, 96–5p, and 6–3p, 82 Fed. Reg. 15,263 (Mar. 27, 2017).
[3] SSR 96–5p's mandatory language parallels that of an earlier regulation, 20 C.F.R. § 404.1512(e), which was eliminated effective March 26, 2012. *Ross v. Colvin*, No. 15-0990, 2015 WL 1636132, at *9 n.4 (M.D. Pa. April 8, 2015).

own guidance, ALJs are still expected to recontact a medical source when doing so is "the most effective and efficient way to resolve an inconsistency or insufficiency" such as when a physician's report "contains a functional assessment of [the claimant's] physical capacity for work, but no clinical or objective findings in support." How We Collect and Consider Evidence of Disability, 76 Fed. Reg. 20,282, 20,283 (April 12, 2011). With "physical capacity" swapped for mental capacity, the agency's hypothetical is the exact situation presented by this case—Dr. Black assessed Plaintiff's capacity for work but did not provide any clinical or objective findings in support. As such, the ALJ should have made some effort to recontact Dr. Black.[4]

The Commissioner argues that the ALJ did not need to recontact Dr. Black because she properly weighed his opinion in light of the lack of treatment notes. (Doc. No. 22 at 20–21). As recontact is intended to shed light on opinions whose bases are unclear, it is not necessary if there is some other valid reason for ignoring the opinion. *See Vargas v. Berryhill*, No. 16-2003, 2018 WL 1938312, at *7 (M.D. Pa. Mar. 13, 2018) (finding recontact unnecessary where ALJ found other medical evidence contradicted physician's opinion), *report and recommendation adopted by* 2018 WL 1932879 (M.D. Pa. Apr. 24, 2018). But the lack of treatment notes is not such a reason— their absence is the reason the bases for Dr. Black's opinion are unclear, necessitating recontact. The Commissioner's position is effectively that the ALJ did not need to seek more information

---

[4] Adding another wrinkle, the ALJ stated at the hearing that she would subpoena Dr. Black for his treatment notes, but never actually did so. (R. at 47–48, 100). The decision contains no explanation for why the ALJ reversed course. Some courts have remanded when ALJs issued subpoenas only to decline to enforce them without explanation after the target failed to comply. *See Navarro v. Astrue*, No. 09-1788, 2010 WL 1649990, at *5 (E.D. Pa. Mar. 26, 2010) (explaining that when an "ALJ fails to enforce a subpoena that he has issued the ALJ should at least articulate his reasoning for doing so" (internal quotation omitted)), *report and recommendation adopted by* 2010 WL 1632906, (E.D. Pa. April 19, 2010); *Mack v. Astrue*, No. 09-2028, 2010 WL 571782 (E.D. Pa. Feb. 12, 2010). *But see Gonell De Abreu v. Colvin*, No. 16-4892, 2017 WL 1843103, at *5 (E.D.N.Y. May 5, 2017) (finding no error where ALJ stated on the record at a hearing that he intended to enforce a subpoena, but never followed through). The situation here is somewhat analogous to these cases. But as the ALJ's failure to make any effort to recontact Dr. Black is itself sufficient reason for remand, the Court finds it unnecessary to decide whether the ALJ also erred by failing to explain her decision not to subpoena Dr. Black.

from Dr. Black because she was missing information from Dr. Black—a proposition that would gut SSR 96–5p of all meaning.[5] As such, the ALJ's failure to recontact Dr. Black warrants remand.

### B. Plaintiff's Other Challenges

Plaintiff also challenges the RFC constructed by the ALJ and the ALJ's treatment of his pain and limitations allegations. But after reassessing Dr. Black's opinion on remand, the ALJ may construct a different RFC, or view Plaintiff's allegations of pain and limitations in a different light. As such, the Court will not address these challenges to the Commissioner's determination at this time.

### V. CONCLUSION

For the foregoing reasons, the Commissioner's determination is **VACATED** and this case is **REMANDED** for further administrative proceedings consistent with this Opinion. An Order follows.

Dated: 4/2/2020 /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

---

[5] Confusingly, the ALJ's decision states that the opinion of Dr. Williams was "given great weight." (R. at 30). As such, the ALJ's decision appears to use Dr. William's opinion as an additional reason for disregarding Dr. Black's. But as the ALJ noted, Dr. Williams did not offer an opinion on Plaintiff's condition—after Plaintiff declined to submit to a mental health examination with her, she merely stated that there was insufficient evidence for her to evaluate Plaintiff. (R. at 30, 117–18). Dr. Williams' non-opinion does not contradict Dr. Black's opinion, meaning the ALJ could not permissibly rely on Dr. Williams to ignore Dr. Black.